IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

05 APR 22 AM 10: 51

| | |
|---|---|
| Donald Bradfisch, individually and on behalf of all others similarly situated, )<br>)<br>) | |
| Plaintiffs, ) | Case No.: 05-CV-298-WDS |
| ) | |
| vs. ) | |
| ) | |
| Templeton Funds, Inc. and Templeton Global Advisors Limited, )<br>) | |
| ) | |
| Defendants. ) | |

## **NOTICE OF REMOVAL**

Defendants Templeton Funds, Inc. and Templeton Global Advisors Limited hereby provide notice of removal of this action to the United States District Court for the Southern District of Illinois, pursuant to 15 U.S.C. §§ 78bb(f)(2) and 77p(c), and 28 U.S.C. § 1446.  The United States Court of Appeals for the Seventh Circuit held, on April 5, 2005, in <u>Kircher v. Putnam Funds Trust</u>, 2005 WL 757255 (copy annexed hereto as Exhibit A), that actions identical to this action are covered class actions involving a covered security within the meaning of the Securities Litigation Uniform Standards Act ("SLUSA"), that they may not be maintained in any State Court, and that they are removable to the Federal District Court for the district in which the action is pending (here, the Southern District of Illinois).  SLUSA, 15 U.S.C. § 78bb(f)(2), provides as follows:

### (2)   Removal of covered class actions

Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

In further support of this Notice of Removal, Defendants aver as follows:

1.    On October 3, 2003, the Complaint in this action was filed in the Circuit Court of Madison County in the State of Illinois.

2.    On October 17, 2003, the Summons and Complaint in this action were served on Templeton Funds, Inc. and Templeton Global Advisors Limited in San Mateo, California and Nassau, Bahamas, respectively (copy of Summons and Complaint annexed hereto as Exhibit B).

3.    On November 14, 2003, Defendants removed this action to the United States District Court for the Southern District of Illinois and it was assigned Civil Case Number 03-760 MJR.

4.    On January 23, 2004, Judge Reagan remanded this action to the Circuit Court of Madison County.

5.    Since remand, no activity has taken place in the Circuit Court of Madison County other than the following:

    a.    Defendant Templeton Global Advisors Limited moved for dismissal of the Complaint for lack of personal jurisdiction — no answering papers have yet been filed by Plaintiff (copy annexed hereto as Exhibit C);

    b.    Defendant Templeton Funds, Inc. answered and moved for the dismissal of the Complaint pursuant to the doctrine of interstate forum non conveniens — no answering papers have yet been filed by Plaintiff (copies annexed hereto as Exhibit D);

    c.    Limited discovery on the personal jurisdiction and forum non conveniens motions has occurred, but there has been no discovery whatsoever on the merits of the Complaint.

6.    On April 5, 2005, as noted above, the Seventh Circuit ruled that state law class

action claims identical to those alleged in the Complaint are foreclosed and blocked by SLUSA. The Court of Appeals **ordered** the United States District Court to undo the prior remand orders and dismiss plaintiffs' state law claims. See Kircher, supra.

7.   On the basis of the April 5, 2005 Order of the Seventh Circuit, it is now clear that this action "is or has become removable" (see 28 U.S.C. § 1446(b) and 15 U.S.C. § 78bb(f)(2) and § 77p(c)).

8.   Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on the Clerk of the Circuit Court of Madison County in the State of Illinois and on Plaintiff's Counsel.

Wherefore, Defendants Templeton Funds, Inc. and Templeton Global Advisors Limited hereby remove this action to the United States District Court for the Southern District of Illinois.

Dated:   April 22, 2005

Respectfully submitted,

POLLACK & KAMINSKY

By: _____

Daniel A. Pollack
Martin I. Kaminsky
Edward T. McDermott
Anthony Zaccaria
114 West 47th Street, Suite 1900
New York, New York 10036
(212) 575-4700
(212) 575-6560 (Facsimile)

- and -

ARMSTRONG TEASDALE LLP


By: _____
    Frank N. Gundlach
    Glenn E. Davis
    Lisa M. Wood
    One Metropolitan Square, Suite 2600
    St. Louis, Missouri 63102-2740
    (314) 621-5070
    (314) 621-5065 (Facsimile)

ATTORNEYS FOR DEFENDANTS
TEMPLETON FUNDS, INC. AND
TEMPLETON GLOBAL ADVISORS, LTD.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served by first-class mail, postage prepaid, upon the attorneys listed below, on this 22nd day of April, 2005:

George A. Zelcs, Esq.
KOREIN TILLERY
Three First National Plaza
70 West Madison, Suite 660
Chicago, Illinois  60602

Stephen M. Tillery, Esq.
KOREIN TILLERY
10 Executive Woods Ct.
Swansea, Illinois  62226

Klint Bruno
LAW OFFICES OF KLINT BRUNO
1131 Lake Street
Oak Park, IL 60301

Robert L. King
SWEDLOW & KING LLC
701 Market Street, Suite 350
St. Louis, MO 63101-1830

ATTORNEYS FOR PLAINTIFFS

Westlaw.

2005 WL 757255

--- F.3d ----, 2005 WL 757255 (7th Cir.(Ill.))

**(Cite as: 2005 WL 757255 (7th Cir.(Ill.)))**

Н

**Briefs and Other Related Documents**

United States Court of Appeals,
Seventh Circuit.
Carl KIRCHER and Robert Brockway, individually
and on behalf of a class, et
al., Plaintiffs-Appellees,
v.
PUTNAM FUNDS TRUST and PUTNAM
INVESTMENT MANAGEMENT, LLC, et al.,
Defendants-
Appellants.
**Nos. 04-1495, 04-1496, 04-1608, 04-1628,
04-1650, 04-1651, 04-1660, 04-1661,
04-2687.**

Argued Jan. 7, 2005.
Decided April 5, 2005.

**Background:** Mutual fund investors brought state-court putative class actions against funds, asserting under state law that funds' misconduct in setting prices had left funds vulnerable to exploitation by arbitrageurs. Funds removed actions under Securities Litigation Uniform Standards Act (SLUSA). The United States District Court for the Southern District of Illinois, G. Patrick Murphy, Chief Judge, David R. Herndon, J., and Michael J. Reagan, J., remanded actions. The Court of Appeals, 373 F.3d 847, ruled that remand orders were appealable.

**Holdings:** Subsequently, the Court of Appeals, Easterbrook, Circuit Judge, held that:
(1) SLUSA preempted actions that defined their classes according to holding of shares between specified dates, and
(2) SLUSA also preempted action that defined its class as investors who held shares between two specified dates but did not purchase or sell shares

during that period.
Reversed and remanded with instructions.

**[1] Securities Regulation ☞278**

349Bk278 Most Cited Cases
Securities Litigation Uniform Standards Act's (SLUSA) language precluding state-court securities fraud class actions, i.e. Act's "untrue statement or omission" and "manipulative or deceptive device" clauses, have same scope as their antecedents in § 10(b) and Rule 10b-5. Securities Act of 1933, § 16(b), as amended, 15 U.S.C.A. § 77p(b); Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

**[1] States ☞18.77**
360k18.77 Most Cited Cases
Securities Litigation Uniform Standards Act's (SLUSA) language precluding state-court securities fraud class actions, i.e. Act's "untrue statement or omission" and "manipulative or deceptive device" clauses, have same scope as their antecedents in § 10(b) and Rule 10b-5. Securities Act of 1933, § 16(b), as amended, 15 U.S.C.A. § 77p(b); Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

**[2] Securities Regulation ☞278**
349Bk278 Most Cited Cases
Purpose of Securities Litigation Uniform Standards Act (SLUSA) is to prevent plaintiffs from migrating to state court in order to evade rules for federal securities litigation contained in Private Securities Litigation Reform Act (PSLRA). Securities Act of 1933, as amended, 15 U.S.C.A. § 77p; Securities Exchange Act of 1934, § 28, as amended, 15 U.S.C.A. § 78bb.

**[2] States ☞18.77**
360k18.77 Most Cited Cases

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT

A

2005 WL 757255                                                        Page 2

--- F.3d ----, 2005 WL 757255 (7th Cir.(Ill.))

**(Cite as: 2005 WL 757255 (7th Cir.(Ill.)))**

Purpose of Securities Litigation Uniform Standards Act (SLUSA) is to prevent plaintiffs from migrating to state court in order to evade rules for federal securities litigation contained in Private Securities Litigation Reform Act (PSLRA). Securities Act of 1933, as amended, 15 U.S.C.A. § 77p; Securities Exchange Act of 1934, § 28, as amended, 15 U.S.C.A. § 78bb.

**[3] Securities Regulation ☞278**
349Bk278 Most Cited Cases
Securities Litigation Uniform Standards Act (SLUSA) preempted mutual funds investors' state-court direct class actions against funds asserting state-law claims that funds' misconduct in setting prices had left funds vulnerable to exploitation by arbitrageurs; classes were defined as investors who held shares of given fund between two specified dates, and any class of "all holders" during even single day contained many purchasers and sellers, placing actions within SLUSA's "in connection with the purchase or sale" language. Securities Act of 1933, § 16(b), as amended, 15 U.S.C.A. § 77p(b); Securities Exchange Act of 1934, § 28, as amended, 15 U.S.C.A. § 78bb.

**[3] States ☞18.77**
360k18.77 Most Cited Cases
Securities Litigation Uniform Standards Act (SLUSA) preempted mutual funds investors' state-court direct class actions against funds asserting state-law claims that funds' misconduct in setting prices had left funds vulnerable to exploitation by arbitrageurs; classes were defined as investors who held shares of given fund between two specified dates, and any class of "all holders" during even single day contained many purchasers and sellers, placing actions within SLUSA's "in connection with the purchase or sale" language. Securities Act of 1933, § 16(b), as amended, 15 U.S.C.A. § 77p(b); Securities Exchange Act of 1934, § 28, as amended, 15 U.S.C.A. § 78bb.

**[4] Securities Regulation ☞278**
349Bk278 Most Cited Cases
Securities Litigation Uniform Standards Act (SLUSA) preempted mutual fund investors' state-court direct class action against fund asserting

state-law claim that fund's misconduct in setting prices had left fund vulnerable to exploitation by arbitrageurs, even though class was defined as investors who held shares between two specified dates but did not purchase or sell shares during that period; i.e., fact that action could not have proceeded as private action for damages under Rule 10b-5, but rather had to be brought either as derivative action or by public prosecutor, did not render SLUSA inapplicable. Securities Act of 1933, § 16(b), as amended, 15 U.S.C.A. § 77p(b); Securities Exchange Act of 1934, § 10(b), 28, as amended, 15 U.S.C.A. §§ 78j(b), 78bb; 17 C.F.R. § 240.10b-5.

**[4] States ☞18.77**
360k18.77 Most Cited Cases
Securities Litigation Uniform Standards Act (SLUSA) preempted mutual fund investors' state-court direct class action against fund asserting state-law claim that fund's misconduct in setting prices had left fund vulnerable to exploitation by arbitrageurs, even though class was defined as investors who held shares between two specified dates but did not purchase or sell shares during that period; i.e., fact that action could not have proceeded as private action for damages under Rule 10b-5, but rather had to be brought either as derivative action or by public prosecutor, did not render SLUSA inapplicable. Securities Act of 1933, § 16(b), as amended, 15 U.S.C.A. § 77p(b); Securities Exchange Act of 1934, § 10(b), 28, as amended, 15 U.S.C.A. §§ 78j(b), 78bb; 17 C.F.R. § 240.10b-5.

George A. Zelcs, Eugene Y. Barash, Robert L. King , Korein Tillery, Chicago, IL, John J. Stoia, Jr., Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Francis J. Balint, Jr., Bonnett, Fairbourn, Friedman & Balint, Phoenix, AZ, for Plaintiffs-Appellees.

Rebecca R. Jackson, Bryan Cave, Jon A. Santangelo, Stinson, Morrison & Hecker, St. Louis, MO, Matthew R. Kipp, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, Gordon R. Broom, Regina L. Wells, Burroughs, Hepler, Broom, MacDonald & Hebrank, Edwardsville, IL, Steven B. Feirson, Dechert, Price & Rhoads, Philadelphia,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----, 2005 WL 757255 (7th Cir.(Ill.))

**(Cite as: 2005 WL 757255 (7th Cir.(Ill.)))**

PA, Mark A. Perry (argued), Gibson, Dunn & Crutcher, Washington, DC, for Defendants-Appellants.

Before EASTERBROOK, RIPPLE, and WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

*1 Complaints filed in the circuit court of Madison County, Illinois, charge several mutual funds with setting prices in a way that arbitrageurs can exploit. The funds removed the suits to federal court and asked the district judges to dismiss them under the Securities Litigation Uniform Standards Act of 1998 (SLUSA). Instead the federal judges remanded each suit. Last year we held that these remands are appealable. See *Kircher v. Putnam Funds Trust,* 373 F.3d 847 (7th Cir.2004). Now we must decide whether SLUSA blocks litigation in state court. (Plaintiffs have asked us to overrule our decision about appellate jurisdiction, but their arguments are unpersuasive.)

Mutual funds must set prices at which they sell and redeem their own shares once a day, and must do so at the net asset value of the funds' holdings. (All of the defendants, which operate in interstate and international commerce, are regulated under the Investment Company Act of 1940; we call them "mutual funds" for convenience.) Each defendant sets that price at 4 p.m. Eastern time, shortly after the New York Stock Exchange closes. Orders placed before the close of business that day are executed at this price.

When the funds hold assets that trade in competitive markets, they must value the assets at their market price. 15 U.S.C. § 80a-2(a)(41)(B)(ii), 17 C.F.R. § 270.2a-4(a). Defendants implement this requirement by valuing securities at the closing price of the principal exchange or market in which the securities are traded. For domestic securities this yields a current price; for securities of foreign issuers, however, it may produce a price that is as much as 15 hours old. (European markets close 5 or 6 hours ahead of New York; Asian markets close 12 to 15 hours before New York.)

Many securities trade on multiple markets or over the counter. Stock of a Japanese firm that closes in Tokyo at ¥10,000 might trade in Frankfurt at i 75.22 (equivalent to ¥10,500) between the close in Tokyo and the close in New York--but the mutual fund nonetheless would value each share at ¥ 10,000, because that was its most recent price in the issuer's home market. If foreign stocks move predominantly up during this interval (or if one foreign security moves substantially higher), the mutual fund as a whole would carry a 4 p.m. price below what would be justified by the latest available information, and an arbitrageur could purchase shares before 4 p.m. with a plan to sell the next day at a profit. Likewise arbitrageurs could gain if the foreign stock falls after the close in its home market, and the arbitrageur knows that the U.S. mutual fund will be overpriced at 4 p.m. relative to the price. it is likely to have the next trading day when new information from abroad finally is reflected in the fund's valuation. See Richard L. Levine, Yvonne Cristovici & Richard A. Jacobsen, *Mutual Fund Market Timing,* Federal Lawyer 28 (Jan.2005).

A short-swing-trading strategy would not be attractive unless the foreign securities' prices had moved enough to cover the transactions costs of matched purchases and sales of the mutual fund shares, but for no-load funds that have substantial investments in foreign markets this condition sometimes is satisfied. Arbitrageurs then make profits with slight risk to themselves, diverting gains from the mutual funds' long-term investors while imposing higher administrative costs on the funds (whose operating expenses rise with each purchase and redemption). Plaintiffs contend that the mutual funds acted recklessly in failing to block arbitrageurs from reaping these profits. Available means might include levying fees on short-swing transactions, adopting to a front-end-load charge, reducing the number of trades any investor can execute (or deferring each trade by one day), and valuing the securities of foreign issuers at the most current price in *any* competitive market (organized or over the counter), and not just the closing price on the issuers' home stock exchanges. Some mutual funds have begun to take steps to curtail arbitrage,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----, 2005 WL 757255 (7th Cir.(Ill.))

**(Cite as: 2005 WL 757255 (7th Cir.(Ill.)))**

while disclosing residual vulnerabilities more prominently, but the litigation targets those funds that have not done so (or targets the period before a given fund acted).

**\*2** SLUSA added to the Securities Act of 1933 and the Securities Exchange Act of 1934 parallel provisions curtailing certain class actions under state law. As in last year's jurisdictional opinion, we limit attention to § 16 of the 1933 Act, 15 U.S.C. § 77p, because the additions to the 1934 Act are functionally identical. See 15 U.S.C. § 78bb. As amended by SLUSA, § 77p(b) reads:

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--

(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or

(2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

Investments in mutual funds are "covered securities," see § 77p(f)(3), and all of these suits are "covered class actions," see § 77p(f)(2), because plaintiffs seek to represent more than 50 investors and each action is direct rather than derivative. (Derivative proceedings are not "covered class actions". See § 77p(f)(2)(B). See also *Burks v. Lasker,* 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979), and *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991), which note that state-law derivative claims may proceed against federally regulated mutual funds.) Section 77p(d) contains a number of additional exceptions, but plaintiffs do not contend that any of them applies to these actions. Thus everything turns on subsection (b), which forecloses a suit based on state law in which a private class alleges "(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security."

**[1][2]** That familiar language comes from Rule 10b-5, 17 C.F.R. § 240.10b-5, which is based on § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b). Rule 10b-5 reads:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Every court of appeals to encounter SLUSA has held that its language has the same scope as its antecedent in Rule 10b-5. *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 395 F.3d 25, 34-36 (2d Cir.2005); *Rowinski v. Salomon Smith Barney Inc.,* 398 F.3d 294, 299 (3d Cir.2005); *Green v. Ameritrade, Inc.,* 279 F.3d 590, 596-97 (8th Cir.2002); *Falkowski v. Imation Corp.,* 309 F.3d 1123, 1131 (9th Cir.2002), amended, 320 F.3d 905 (2003); *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 292 F.3d 1334, 1342- 43 (11th Cir.2002). We agree with this conclusion. SLUSA is designed to prevent plaintiffs from migrating to state court in order to evade rules for federal securities litigation in the Private Securities Litigation Reform Act of 1995. See *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 332 F.3d 116, 122-24 (2d Cir.2003) (discussing how PSLRA and SLUSA work). SLUSA can do its job only if subsection (b) covers those claims that engage Rule 10b-5 (and thus come within the 1995 statute) if presented directly under federal law; this is why SLUSA borrows the Rule's language. Unfortunately, however, the other circuits do not agree among themselves (or with the SEC) what Rule 10b-5 itself means. The phrase "in connection with the purchase or sale" of a security is the sticking point.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 757255                                                                                                    Page 5

--- F.3d ----, 2005 WL 757255 (7th Cir.(Ill.))

**(Cite as: 2005 WL 757255 (7th Cir.(Ill.)))**

*3 [3] The Supreme Court held in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), that investors who neither purchase nor sell securities may not collect damages in private litigation under § 10(b) and Rule 10b-5, even if failure to purchase or sell was the result of fraud. Assuming that SLUSA's "in connection with" language means "able to pursue a private right of action after *Blue Chip Stamps,*" plaintiffs attempted to frame complaints that avoid any allegations of purchase or sale. All but one of the classes is defined as investors who held shares of a given fund between two specified dates. As an effort to evade SLUSA, this class definition is a flop: some of the investors who held shares during the class period must have purchased their interest (or increased it) during that time; others, who owned shares at the beginning of the period, undoubtedly sold some or all of their investment during the window. Each of the funds has substantial daily turnover, so the class of "all holders" during even a single day contains many purchasers and sellers. All of these class actions therefore must be dismissed. (Plaintiffs do not contend that any *other* part of SLUSA is pertinent; in particular, they did not argue in their briefs--and did not maintain at oral argument despite the court's invitation--that their suits allege mismanagement rather than deceit or manipulation. See *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). Counsel for the plaintiffs declined to explain how state law would support a direct action that did not rely on deceit or manipulation. A claim based on mismanagement likely would need to be cast as a derivative action, which none of these suits purports to be. Nor does any of the suits assert that a mutual fund broke a promise, so that state contract law would supply a remedy.)

[4] The complaint in *Spurgeon v. Pacific Life Insurance Co.* avoids this pitfall. It defines the class as all investors who held the fund's securities during a defined period *and* neither purchased nor sold shares during that period. *Blue Chip Stamps* would prevent such a private action from proceeding under Rule 10b-5. Plaintiffs insist that any private action that is untenable after *Blue Chip Stamps* also is

unaffected by SLUSA. The district judge, agreeing with this perspective, remanded *Spurgeon* to state court.

An equation between SLUSA's coverage and the scope of private damages actions under Rule 10b-5 has the support of the second circuit (*Dabit* ), the eighth circuit (*Green* ), and the eleventh circuit ( *Riley* ). The ninth circuit (*Falkowski* ), by contrast, has written that coverage of SLUSA tracks the coverage of § 10(b) and Rule 10b-5 when enforced by *public* plaintiffs (the SEC or a criminal prosecutor). The third circuit (*Rowinski* ) has reserved decision on this issue. The Securities and Exchange Commission filed a brief in *Dabit* as amicus curiae supporting the view that SLUSA tracks the full scope of § 10(b) and Rule 10b-5, not just their enforcement in private actions. The way the *Spurgeon* class has been defined prevents us from following the third circuit's path: we must answer the question rather than postpone its resolution.

*4 To say that SLUSA uses the same language as § 10(b) and Rule 10b-5 is pretty much to resolve the point. Section 10(b) defines a federal crime, and it also permits the SEC to enforce the prohibition through administrative proceedings. Invocation of this anti-fraud rule does not depend on proof that the agency or United States purchased or sold securities; instead the "in connection with" language ensures that the fraud occurs in securities transactions rather than some other activity. See *SEC v. Zandford,* 535 U.S. 813, 821-22, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002); *Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).

*Blue Chip Stamps* came out as it did not because § 10(b) and Rule 10b-5 are limited to situations in which the plaintiff itself traded securities, but because a private right of action to enforce these provisions is a judicial creation and the Court wanted to confine these actions to situations where litigation is apt to do more good than harm. The Justices observed that anyone can *say* that a failure to trade bore some relation to what the issuer did (or didn't) disclose, but that judges and juries would

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 757255

Page 6

--- F.3d ----, 2005 WL 757255 (7th Cir.(Ill.))

**(Cite as: 2005 WL 757255 (7th Cir.(Ill.)))**

have an exceedingly hard time knowing whether a given counterfactual claim ("I *would have* traded, if only ...") was honest. The Court thought it best to limit private actions to harms arising out of actual trading, which narrows the affected class and simplifies proof, while leaving other securities offenses to public prosecutors.

Decisions since *Blue Chip Stamps* reiterate that it deals with private actions alone and does not restrict coverage of the statute and regulation. See *United States v. O'Hagan,* 521 U.S. 642, 664, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997); *Holmes v. SIPC,* 503 U.S. 258, 284, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *United States v. Naftalin,* 441 U.S. 768, 774 n. 6, 99 S.Ct. 2077, 60 L.Ed.2d 624 (1979). By depicting their classes as containing entirely non-traders, plaintiffs do not take their claims outside § 10(b) and Rule 10b-5; instead they demonstrate only that the claims must be left to public enforcement. It would be more than a little strange if the Supreme Court's decision to block private litigation by non-traders became the opening by which that very litigation could be pursued under state law, despite the judgment of Congress (reflected in SLUSA) that securities class actions must proceed under federal securities law or not at all. *Blue Chip Stamps* combined with SLUSA may mean that claims of the sort plaintiffs want to pursue must be litigated as derivative actions or committed to public prosecutors, but this is not a good reason to undercut the statutory language.

Could the SEC maintain an action under § 10(b) and Rule 10b-5 against municipal funds that fraudulently or manipulatively increased investors' exposure to arbitrage? Suppose the funds stated in their prospectuses that they took actions to prevent arbitrageurs from exploiting the fact that each fund's net asset value is calculated only once a day. That statement, if false (and known to be so), could support enforcement action, for the deceit would have occurred in connection with investors' purchases of the funds' securities. Similarly, if these funds had stated bluntly in their prospectuses (or otherwise disclosed to investors) that daily valuation left no-load funds exposed to short-swing trading strategies, that revelation would have

squelched litigation of this kind.

*5 These observations show that plaintiffs' claims depend on statements made or omitted in connection with *their own* purchases of the funds' securities. They could have brought them directly under Rule 10b-5 in federal court (to the extent that the purchases occurred within the period of limitations). Indeed, most of the approximately 200 suits filed against mutual funds in the last two years alleging that the home-exchange-valuation rule can be exploited by arbitrageurs have been filed in federal court under Rule 10b-5. Our plaintiffs' effort to define non-purchaser-non-seller classes is designed to evade PSLRA in order to litigate a securities class action in state court in the hope that a local judge or jury may produce an idiosyncratic award. It is the very sort of maneuver that SLUSA is designed to prevent.

We hold that SLUSA is as broad as § 10(b) itself and that limitations on private rights of action to enforce § 10(b) and Rule 10b-5 do not open the door to litigation about securities transactions under state law. Plaintiffs' claims are connected to their own purchases of securities and thus are blocked by SLUSA, whose preemptive effect is not confined to knocking out state-law claims by investors who have *winning* federal claims, as plaintiffs suppose. It covers both good and bad securities claims-- *especially* bad ones. The judgments of the district courts are reversed, and the cases are remanded with instructions to undo the remand orders and dismiss plaintiffs' state-law claims.

--- F.3d ----, 2005 WL 757255 (7th Cir.(Ill.))

**Briefs and Other Related Documents (Back to top)**

• 04-2687 (Docket)

(Jul. 06, 2004)

• 04-1660 (Docket)

(Mar. 18, 2004)

• 04-1661 (Docket)

(Mar. 18, 2004)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 757255

--- F.3d ----, 2005 WL 757255 (7th Cir.(Ill.))

**(Cite as: 2005 WL 757255 (7th Cir.(Ill.)))**

- 04-1650  (Docket)
                          (Mar. 17, 2004)

- 04-1651  (Docket)
                          (Mar. 17, 2004)

- 04-1628  (Docket)
                          (Mar. 15, 2004)

- 04-1608  (Docket)
                          (Mar. 12, 2004)

- 04-1495  (Docket)
                          (Mar. 01, 2004)

- 04-1496  (Docket)
                          (Mar. 01, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FILED

IN THE CIRCUIT COURT OF MADISON COUNTY
STATE OF ILLINOIS

2004 AUG 12 PM 2: 11

CLERK OF CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

DONALD BRADFISCH, individually and on )
behalf of all others similarly situated,               )
                                                                       )
                       Plaintiff,                              )
                                                                       )              Case No: 03-L-1361
vs.                                                                  )
                                                                       )
TEMPLETON FUNDS, INC. and                      )
TEMPLETON GLOBAL ADVISORS, LTD.,   )
                                                                       )
                       Defendants.                         )
                                                                       )

**EXHIBIT**

C

## MOTION OF TEMPLETON GLOBAL ADVISORS LIMITED
## TO DISMISS FOR LACK OF PERSONAL JURISDICTION:
## § 5/2-301 ILL. CODE CIV. PROC.

Defendant Templeton Global Advisors Limited ("Global Advisors"), by its attorneys,
respectfully moves the Court to dismiss this action as to it pursuant to Section 5/2-301 of the Illinois
Code of Civil Procedure for lack of personal jurisdiction over Global Advisors.

In support of its motion, Global Advisors states as follows:

**I.  The Complaint**

1.       The Complaint herein was filed by an alleged investor in Templeton World Fund, a
mutual fund (the "Fund"), purporting to sue on behalf of himself and a putative class of investors in
the Fund.  The Complaint names two defendants, Templeton Funds, Inc., the Florida-based sponsor
of the Fund, and Global Advisors, the Bahamas-based adviser to the Fund.

2.       The Complaint alleges that the defendants improperly value the Fund's shares by
using the last trade price in the home market of each foreign security held by the Fund.  (Cplt. ¶ 12).
The Complaint alleges that those foreign prices are "stale" since they do not reflect the current value
of those shares at 4:00 p.m. E.S.T.  (Cplt. ¶ 16).  The Complaint alleges that the defendants' use of
stale prices injures Fund shareholders, in that market-timing traders may take advantage of the stale

prices to obtain excess profits at the expense of the Fund and its shareholders.  The Complaint alleges that market-timing traders allegedly make such improper profits when they purchase Fund shares from the Fund at a "discount" or redeem Fund shares of the Fund at a "premium."  (Cplt. ¶¶ 29-34).  The Complaint alleges that as a result of that trading by "market timers":  (a) the Fund assets (and thus the value of each share of that Fund) are reduced; (b) the Fund suffers increased trading and transaction costs; (c) the Fund's strategies are disrupted; and (d) the Fund incurs lost opportunity costs and is subjected to "asset swings."  (Cplt. ¶¶ 35-36).

## II.  Ground for Dismissal: Section 5/2-301 -- Lack of Personal Jurisdiction

3.      The Illinois courts, and the United States Supreme Court, have recognized two distinct types of personal jurisdiction:  general and specific.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984); Radosta v. Devil's Head Ski Lodge, 172 Ill. App. 3d 289, 526 N.E.2d 561 (1988); Rokeby-Johnson v. Derek Bryant Ins. Brokers, Ltd., 230 Ill. App. 3d 308, 594 N.E.2d 1190 (1992).

4.      For general personal jurisdiction, a defendant's contacts with Illinois must be "substantial" as well as "continuous and systematic."  Helicopteros, 466 U.S. at 415-16; Khan v. Van Remmen, Inc., 325 Ill. App. 3d 49, 756 N.E.2d 902 (2001); Kadala v. Cunard Lines, Ltd., 226 Ill. App. 3d 302, 589 N.E.2d 802, 810 (1992); Huck v. Northern Ind. Pub. Serv. Co., 117 Ill. App. 3d 837, 453 N.E.2d 1365 (1983).

5.      For specific jurisdiction, a defendant must have "purposefully directed" its activities at Illinois and the claims for relief must directly "arise out of or relate" to those activities. Helicopteros, 466 U.S. at 414.  This Court has neither general nor specific personal jurisdiction over Global Advisors.

a.      **General Personal Jurisdiction** -- The Court lacks general personal

jurisdiction over Global Advisors because:

      (i) Global Advisors is a corporation **organized under the laws of the Bahamas** with its **principal place of business** in Lyford Cay, **Bahamas**;

      (ii) Global Advisors **has no employees, officers or directors** located **in Illinois**;

      (iii) Global Advisors has **no office** and **no business records in Illinois**. Its sole office is in the Bahamas. Its records are located generally in the Bahamas and Florida;

      (iv) Global Advisors is **not licensed or qualified to do business in Illinois**;

      (v) Global Advisors has **no phone number or agent for service of process in Illinois**;

      (vi)     Global Advisors has **no bank account in Illinois**;

      (vii) Global Advisors has **no revenues from, and no clients in, Illinois**; and

      (viii) Global Advisors makes **no solicitations of clients in Illinois**.

In sum, Global Advisors does not have the requisite "substantial, continuous and systemic" contacts with the State of Illinois for this Court to exercise general personal jurisdiction over it.

      b.    **Specific Personal Jurisdiction** -- This Court lacks specific personal jurisdiction because no allegedly actionable activity was "purposefully directed" at Illinois. None of the challenged conduct (i.e. the alleged mis-valuation of portfolio securities of the Fund) occurred in Illinois. Accordingly, there is no basis for this Court to exercise specific personal jurisdiction over Global Advisors.[1]

---

[1] Given the absence of any meaningful contact by Global Advisors with Illinois (e.g. any act by which it purposefully availed itself of the privilege of conducting business in Illinois), the due process requirements of the United States Constitution are not met here. See also Pilipauskas v. Yakel, 258 Ill. App. 3d 47, 629 N.E.2d 733 (1994).

6.      Global Advisors will file a memorandum of law setting forth its legal arguments and case authority supporting the dismissal of Plaintiff's claims against Global Advisors.

Wherefore, for the reasons set forth herein, in the attached Affidavit of Gregory E. McGowan, and in the memorandum of law to be filed in support of this motion, Defendant Templeton Global Advisors Limited respectfully requests that the Court grant the motion to dismiss the Complaint against it for lack of personal jurisdiction.

Dated:  August 12, 2004

Respectfully submitted,

ARMSTRONG TEASDALE LLP

By: _____

Raymond R. Fournie          #3126094
Glenn E. Davis              #6184597
Lisa M. Wood                #6202911
Jacqueline P. Ulin          #6276863
One Metropolitan Square, Suite 2600
St. Louis, Missouri 63102-2740
(314) 621-5070
(314) 621-5065 (Facsimile)

4

OF COUNSEL:

Daniel A. Pollack, Esq.
Martin I. Kaminsky, Esq.
Edward T. McDermott, Esq.
Anthony Zaccaria, Esq.
Pollack & Kaminsky
114 West 47th Street
New York, NY  10036
(212) 575-4700
(212) 575-6560 (Facsimile)

                                        ATTORNEYS FOR DEFENDANTS
                                        TEMPLETON FUNDS, INC. AND
                                        TEMPLETON GLOBAL ADVISORS, LTD.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served by first-class mail, postage prepaid, upon the attorneys listed below, on this 12th day of August, 2004:

George A. Zelcs, Esq.
KOREIN TILLERY
Three First National Plaza
70 West Madison, Suite 660
Chicago, Illinois  60602

Stephen M. Tillery, Esq.
KOREIN TILLERY
10 Executive Woods Ct.
Swansea, Illinois  62226

Eugene Barash, Esq.
KOREIN TILLERY
701 Market Street, Suite 300
St. Louis, Missouri  63101

ATTORNEYS FOR PLAINTIFFS

In the Circuit Court
Third Judicial Circuit
Madison County, Illinois

---

Donald Bradfisch, individually and
on behalf of all others similarly
situated,                                  : Cause No. 03L-1361
                                           :
                   Plaintiff,              :
                                           :
         -against-                         : **Affidavit of**
                                           : **Gregory E. McGowan**
Templeton Funds, Inc., a corporation       :
and Templeton Global Advisors Limited,     :
                                           :
                   Defendants.             :

---

State of Florida      )
                      ) ss.:
Broward County        )

        Gregory E. McGowan, being first duly sworn, deposes and
states:

        1.   I am an Executive Vice President and Secretary of
Defendant Templeton Global Advisors Limited ("Global Advisors"),
and have been an officer of Global Advisors since 1992.  I submit
this Affidavit in Support of Global Advisors' Motion to Dismiss the
Complaint against it for lack of personal jurisdiction pursuant to
§ 5/2-301, Ill. Code Civ. Pro.  I have personal knowledge of the
matters set forth herein.

        2.   Defendant Global Advisors is a corporation organized
under the laws of the Bahamas with its sole place of business in
Lyford Cay, Nassau, Bahamas.

1

3.   Global Advisors, at all relevant times, has provided investment advisory services to Templeton World Fund (the "Fund"), a Florida-based mutual fund in which plaintiff Donald Bradfisch alleges he is a shareholder.

4.   None of the challenged conduct of Global Advisors — the allegedly improper valuations of portfolio securities of the Fund and allegedly allowing "market timing" transactions in the Fund — were performed or occurred in Illinois.

5.   None of Global Advisors' 50 employees, directors or officers resides or works in Illinois.  All of its employees are located in the Bahamas.  Its officers and directors reside in the Bahamas and elsewhere — but none in Illinois.

6.   Global Advisors receives no revenue from Illinois, and has no clients in Illinois.  Global Advisors has not solicited and does not solicit business in Illinois.

7.   Global Advisors has no office in Illinois.  As noted above, its sole office is in the Bahamas.

8.   Global Advisors is not licensed or qualified to do business in Illinois and is not doing business in Illinois.

9.   Global Advisors has no business records in Illinois.  Its business records are located principally in the Bahamas and Florida.

10.  Global Advisors has no bank account in Illinois.

2

11. Global Advisors has no agent for service of process in Illinois.

_____
Gregory McGowan

Subscribed and sworn to before me
this *10* day of June, 2004.

_____
Notary Public

OFFICIAL NOTARY SEAL
ANN C HERRICK
COMMISSION NUMBER
DD148867
MY COMMISSION EXPIRES
SEPT 16,2006

NOTARY PUBLIC
STATE OF FLORIDA

3

IN THE CIRCUIT COURT OF MADISON COUNTY
STATE OF ILLINOIS

FILED

SEP 16 2004

CLERK OF CIRCUIT COURT #8
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

DONALD BRADFISCH, individually and on )
behalf of all others similarly situated, )
                              )
            Plaintiff, )
                              )
vs.                           )      Case No: 03-L-1361
                              )
TEMPLETON FUNDS, INC. and )
TEMPLETON GLOBAL ADVISORS, LTD., )
                              )
        Defendants. )

**MEMORANDUM OF LAW OF**
**DEFENDANT TEMPLETON GLOBAL ADVISORS, LIMITED**
**IN SUPPORT OF MOTION TO DISMISS**
**FOR LACK OF PERSONAL JURISDICTION**

      Defendant Templeton Global Advisors, Limited ("Global Advisors") submits this
memorandum of law in support of its motion to dismiss the Complaint against it for lack of
personal jurisdiction, pursuant to § 5/2-301, Ill. Code Civ. Pro.  Global Advisors is a foreign
investment adviser with no contact with Illinois for jurisdictional purposes.  It does not have any
office, employees, officers, directors, or clients in Illinois.  It does not solicit clients in Illinois.  It
is not "doing business" in Illinois.  Its sole office is in Nassau, the Bahamas.  Its sole business is
as an investment adviser to a Florida-based mutual fund (and other clients not based in Illinois).
In addition, the allegedly actionable conduct – the so-called "stale" pricing of portfolio securities
of the Florida-based mutual fund (in which Plaintiff is allegedly an investor) – did not take place
in Illinois.  Plaintiff does not state anything to the contrary in the Complaint.  For these and other
reasons set forth in the accompanying papers, the Court should hold that it lacks personal
jurisdiction over Defendant Global Advisors.

## The Facts

The relevant facts are set forth in the affidavit of Gregory E. McGowan filed with the motion and, in the interests of brevity, will not be repeated herein.

## The Law

### The Court Lacks Personal Jurisdiction
### Over Defendant Global Advisors

Plaintiff cannot satisfy the "quite high" standard for this Court's general jurisdiction,[1] namely that Global Advisors' contacts with Illinois were not occasional or transient, but were "continuous, permanent, ongoing and systematic." Cook Assocs., Inc. v. Lexington United Corp., 87 Ill. 2d 190, 201, 429 N.E.2d 847, 852 (1981); Kadala v. Cunard Lines Ltd., 226 Ill. App. 3d 302, 314, 589 N.E.2d 802, 810 (1st Dist. 1992).

In Rokeby-Johnson v. Derek Bryant Insurance Brokers, Ltd., 230 Ill. App. 3d 308, 320, 594 N.E.2d 1190, 1198-99 (1st Dist. 1992), the Court held that personal jurisdiction, on the ground of "doing business," was lacking as to a London-based insurance broker which was alleged to have breached its contracts with plaintiffs to supervise another firm which would issue insurance policies to plaintiffs, stating (at 1198):

> Under the proper analysis, there is no showing here that Bryant Brokers was "doing business" in Illinois. The record does not reveal that Bryant Brokers actively procured business from Illinois. Plaintiffs allege that Bryant Brokers "made repeated solicitations and visits of its officers to Illinois"; however, under Cook and its progeny, mere solicitation does not vest jurisdiction in the Illinois courts.

---

[1] The "specific" form of personal jurisdiction is not an issue in this action. Plaintiff's claims do not arise out of any challenged activity in Illinois. Thus, there is no basis for "specific" personal jurisdiction. Campbell v. Mills, 262 Ill. App. 3d 624, 628, 634 N.E.2d 41, 44 (5th Dist. 1994). Similarly, given the absence of any meaningful contact by Global Advisors (e.g., any act by which it purposefully availed itself of the privilege of conducting business in Illinois), the due process requirements of the United States Constitution are not met for this Court to exercise jurisdiction over Global Advisors. See, e.g., Pilipauskas v. Yakel, 258 Ill. App. 3d 47, 629 N.E.2d 733, 738-41 (1st Dist. 1994).

2

Furthermore, in <u>Khan v. Van Remmen, Inc.</u>, 325 Ill. App. 3d 49, 55, 756 N.E.2d 902, 908 (2nd Dist. 2001), the Court held that the defendant Wisconsin-based company, in an action to recover wages from it, was not "doing business" in Illinois <u>even when it had clients in Illinois</u>, stating (at 908):

> We do not consider the placement of four employees with Illinois companies over a five-year period to be sufficiently permanent or continuous contacts to constitute "doing business" in Illinois.
>
> Contrary to plaintiff's assertion, the fact that a nonresident corporation has clients in Illinois does not necessarily lead to the conclusion that the corporation was doing business in Illinois. . . . Further, VRI had no offices in Illinois, no Illinois phone number, and no other permanent or continuous connection with Illinois that would establish that it was doing business in Illinois.

Again, in <u>Kadala</u>, 589 N.E.2d at 810, the Court held that revenues earned by an out-of-state business through extensive advertising in Illinois did not submit the business to jurisdiction under the "doing business" test, stating (at 810):

> Plaintiff here emphasizes the extensive nature of defendant's advertising activity in Illinois and revenues derived from Illinois in support of her contention that defendant has conducted business on a "continuing and systematic basis." We do not, however, believe that these activities satisfy the "doing business" test. . . . At best, advertising amounts only to solicitation, which, as discussed above, is insufficient to submit a defendant to jurisdiction under the "doing business" test, as it is insufficient under the "transaction of business" test postulated under section 2-209 of the long-arm statute. [citations omitted] The fact that a defendant who solicits business in the State derives revenue from the State would seem to be implicit, even though not expressly discussed in the cases, as a natural result [of] successful solicitation, and not an independent factor upon which to determine that a non-resident corporation is "doing business" in the State. Moreover, defendant here did not receive any revenues in this state; all payments were received in its New York office. Accordingly, we hold that defendant is not "doing business" in Illinois so as to be amenable to *in personam* jurisdiction.

Accord <u>Radosta v. Devil's Head Ski Lodge</u>, 172 Ill. App. 3d 289, 294-96, 526 N.E.2d 561, 564-65 (1st Dist. 1988) (the "doing business" test was not satisfied where an out-of-state business sold

its ski services in local Illinois shops, bought billboard advertising in Illinois, and had an Illinois telephone number, and attended annual trade shows in Illinois); Huck v. Northern Ind. Pub. Serv. Co., 117 Ill. App. 3d 837, 843-44, 453 N.E.2d 1365, 1371 (1st Dist. 1983) ("doing business" test not satisfied where defendant maintained no offices, solicited no business and had no employees, agents or customers in Illinois).

Here, these holdings mandate a finding that the Court lacks "general" personal jurisdiction over Global Advisors. As shown in the Affidavit of Gregory E. McGowan, Global Advisors has not even had occasional contacts with Illinois sufficient for jurisdictional purposes. It has had no physical presence in Illinois. Like the defendant in Khan, 756 N.E.2d at 908, Global Advisors has "had no offices in Illinois [and] no Illinois phone number." Its sole office has been and is in the Bahamas. It has no employees, offices or agents in Illinois. See Huck, 453 N.E.2d at 1371. It also has had no client in Illinois. See Khan, 756 N.E.2d at 908, where the Court found that the defendant was not "doing business" in Illinois even though it was servicing clients in Illinois. Global Advisors also does not go into Illinois to solicit business. See Rokeby-Johnson, 594 N.E.2d at 1198-99. It also has none of the other indicia of "doing business" in Illinois: it is not licensed or qualified to do business in Illinois, it has no bank account in Illinois, and it has no representatives in Illinois for service of process or otherwise.

## Conclusion

The Court should dismiss the Complaint against Defendant Templeton Global Advisors Limited on the ground of lack of personal jurisdiction.

Dated:  September 16, 2004

Respectfully submitted,

ARMSTRONG TEASDALE LLP

By: _____

Raymond R. Fournie          #3126094
Glenn E. Davis              #6184597
Lisa M. Wood                #6202911
Jacqueline P. Ulin          #6276863
One Metropolitan Square, Suite 2600
St. Louis, Missouri 63102-2740
(314) 621-5070
(314) 621-5065 (Facsimile)

OF COUNSEL:

Daniel A. Pollack, Esq.
Martin I. Kaminsky, Esq.
Edward T. McDermott, Esq.
Anthony Zaccaria, Esq.
Pollack & Kaminsky
114 West 47th Street
New York, NY 10036
(212) 575-4700
(212) 575-6560 (Facsimile)

ATTORNEYS FOR DEFENDANTS
TEMPLETON FUNDS, INC. AND
TEMPLETON GLOBAL ADVISORS, LTD.

5

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served by first-class mail, postage prepaid, upon the attorneys listed below, on this 16th day of September, 2004:

George A. Zelcs, Esq.
KOREIN TILLERY
Three First National Plaza
70 West Madison, Suite 660
Chicago, Illinois 60602

Stephen M. Tillery, Esq.
KOREIN TILLERY
10 Executive Woods Ct.
Swansea, Illinois 62226

Eugene Barash, Esq.
KOREIN TILLERY
701 Market Street, Suite 300
St. Louis, Missouri 63101

Andrew S. Friedman
Francis J. Balint, Jr.
BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
2901 N. Central Ave., Suite 1000
Phoenix, Arizona 85012

ATTORNEYS FOR PLAINTIFF

6